UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

LAVON MOTLEY,

        Plaintiff,

v.                                         Case No. 18-cv-33-pp

JOEL ROEKER,

        Defendant.

---

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 19), DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 29) AND DENYING PLAINTIFF'S MOTION TO STRIKE (DKT. NO. 44)**

---

      The plaintiff, representing himself, filed this lawsuit under 42 U.S.C. §1983, alleging that the defendant violated his constitutional rights. Dkt. No. 1. On February 15, 2018, the court issued a screening order, allowing the plaintiff to proceed on a claim that the defendant was deliberately indifferent to his medical needs after the defendant allegedly failed to address the plaintiff's self-harm. Dkt. No. 9. On June 15, 2018, the plaintiff moved for summary judgment. Dkt. No. 19. On September 17, 2018, the defendant moved for summary judgment. Dkt. No. 29. During the briefing on the summary judgment motions, the plaintiff also moved to strike Lucas Weber's declaration, stating that it was false. Dkt. No. 44. The court will deny all three motions.

1

## I. SUMMARY JUDGMENT MOTIONS (DKT. NOS. 19, 29)

A. <u>Facts</u>

At the time of the events he describes in the complaint, the plaintiff was an inmate at Columbia Correctional Institution, and the defendant was a correctional officer there. Dkt. No. 31 at ¶¶1-2.

### 1. *The Plaintiff's Version of Events*

The plaintiff alleges that on November 28, 2014, "around lunch time," he informed the defendant that he was going to cut himself.[1] Dkt. No. 21 at ¶1; Dkt. No. 20-2 at 10. The defendant allegedly told the plaintiff that he didn't think the plaintiff was going to cut himself, then walked away. Id. The defendant came back around 12:15 P.M. to hand out medication. Dkt. No. 21 at ¶2; Dkt. No. 20-2 at 10. The plaintiff once again told the defendant that he was going to cut himself, and that either he needed to see the Psychological Services Unit ("PSU") or the defendant needed to call a "white shirt." Id. The plaintiff alleges that he also told the defendant that he needed to be placed in observation. Id. The plaintiff asserts that the defendant "was still talking to [the plaintiff] as if he didn't believe him," and left his cell for about two minutes. Dkt. No. 21 at ¶2.

---

[1] The plaintiff filed an inmate complaint (CCI #201423555) that was received on December 1, 2014. The plaintiff attached the inmate complaint as an exhibit to his brief in support of his summary judgment motion (Dkt. No. 20) and incorporated it by reference into his Plaintiff's Proposed Findings of Fact, so the court has considered it because it is was incorporated into the complaint by reference.

2

The plaintiff says that he yelled down the hall to the defendant that he needed his medication. Id. The defendant came back to the cell, and the plaintiff cut open his left arm with a sharp metal object while the defendant watched and in view of the cameras. Id.; Dkt. No. 20-2 at 10. The plaintiff asserts that the defendant did nothing, leaving the plaintiff in his cell with an open wound and the sharp metal object. Dkt. No. 21 at ¶4; Dkt. No. 20-2 at 10. The plaintiff states that he gave himself a "deep puncture wound," and that he was bleeding and in pain. Dkt. No. 21 at ¶4; Dkt No. 20-2 at 11. He asserts that he filed an inmate complaint; it appears that he signed it the day after the incident, and that the prison staff received it the following day. Dkt. No. 21 at ¶7; see Dkt. No. 20-2 at 10. The plaintiff says that he was interviewed by staff regarding the incident and that he gave a written statement, but that the "the defendant's seem to not have these records anymore." Dkt. No. 21 at ¶10; Dkt. No. 20 at 3.

    2.  *The Defendant's Version of Events*

The defendant says that when an inmate arrives at Columbia, he is given a handbook that informs him that if he has an emergency requiring medical or psychological staff, he must immediately alert unit staff. Dkt. No. 31 at ¶5. In non-emergency situations, if an inmate wants to see a psychological services clinician, he must fill out a "green slip" (a psychological services request). Id. at ¶6. The defendant states that inmates often request to see psychological services clinicians, and when they do so, he instructs them to fill out a green slip. Id. at ¶7. The defendant explains that when an inmate says he is going to

3

harm himself or asks to be placed under clinical observation, the defendant contacts a supervisor, medical services, or psychological services, depending on what would best protect the inmate. Id. at ¶9. The defendant indicates that if an inmate engages in self-harm, the psychological services unit would be contacted, and there would be a note in the inmate's psychological record. Id. at ¶16. The defendant says he also would have contacted his sergeant or a security supervisor and asked for help from medical or psychological staff, and that the incident would have been documented in the unit logbook. Id. at ¶11.

The defendant says that if what the plaintiff alleges had occurred, the defendant would have contacted a supervisor and asked for medical or psychological services, and the incident would have been recorded in the unit logbook. Id. The defendant states that the plaintiff never told the defendant that he was thinking of hurting himself or that he needed to go on observation status. Id. at ¶12. The defendant argues that that had the plaintiff cut himself and bled, it would have been recorded in the unit logbook and someone would have called an inmate worker to come clean the cell. Id. at ¶13. The defendant asserts that there is no record of an inmate worker cleaning the plaintiff's cell on November 28, id. at ¶14, and there is no record of any activity regarding the plaintiff in the unit logbook for that day, id. at ¶15.

The defendant also argues that the plaintiff's psychological services file does not contain any observation notes or clinical contact notes, does not indicate that the plaintiff was in observation on November 28 and does not indicate that the plaintiff harmed himself on that date. Id. at ¶¶16-18. The

4

defendant notes that the plaintiff was seen at the PSU several times around November 28, but that there is no mention of any self-harm taking place on November 28. Id. at ¶¶19-20. The defendant also states that the plaintiff's health services unit file does not contain record of any injury from self-harm on November 28, or a report of such an injury. Id. at ¶21. The defendant further states that there was no evidence of any prison staff interviewing the plaintiff regarding his complaint. Dkt. No. 42 at ¶10.

      3.    *Discussion*

          a.    Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." Anderson, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be disputed or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

5

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

      b.     Analysis

The plaintiff claims that the defendant violated his Eighth Amendment rights when he ignored the plaintiff's threat of self-harm and did not seek medical help for the plaintiff's self-inflicted wound. The defendant claims that the plaintiff never threatened to harm himself and did not harm himself. This is a genuine dispute of a material question of fact, and the court will deny both motions for summary judgment.

Under the Eighth Amendment's cruel and unusual punishment clause, prison officials "have a duty to 'ensure that inmates receive adequate food, clothing, shelter, and medical care.'" Estate of Miller, ex. rel. Bertram v. Tobiasz, 680 F.3d 984, 989 (7th Cir. 2012) (quoting Farmer v. Brennan, 511 U.S. 825, 832 (1994)). The court considers both an objective and subjective element to determine if a prison official failed that duty and violated an inmate's Eighth Amendment rights. Id. The inmate must have suffered "a deprivation" that is "objectively, sufficiently serious." Sanville v. McCaughtry, 266 F.3d 724, 733 (7th Cir. 2001). Also, "the mental state of the prison official

6

must have been 'one of deliberate indifference to inmate health or safety.'" Id. (quoting *Farmer*, 511 U.S. at 832.)

There is a genuine dispute of material fact as to the first prong of the deliberate indifference analysis—whether the plaintiff suffered an objectively serious harm. The plaintiff alleges that he intentionally cut himself using a sharp metal object, causing a "deep puncture," an "open wound bleeding in pain." Dkt. No. 31 at ¶4; Dkt. No. 20-2 at 11. If the plaintiff's claim is true, he would have been at an objectively serious risk to his health and safety. "Suicide, attempted suicide and other acts of self-harm clearly pose a 'serious' risk to an inmate's health and safety." Goodvine v. Ankarlo, 9 F.Supp.3d 899, 934 (W.D. Wis 2014) (citing Collins v. Seeman, 462 F.3d 757, 760 (7th Cir. 2006)).

The defendant says the plaintiff did not harm himself on November 28. He asserts that there is no evidence in the prison records to support the plaintiff's claims, and argues that if there are no records, what the plaintiff alleges could not have happened. The logic behind the defendant's argument is faulty. It does not absolutely follow that if there is no record of the plaintiff cutting himself, the plaintiff did not cut himself. If, as the plaintiff alleges, the defendant ignored the plaintiff's self-harm, it makes sense that the defendant would not have made a record in the logbook, would not have reported the incident to anyone—would not have done anything that would have created a record, and perhaps would have taken steps to destroy what records did exist.

7

The defendant asserts that because the plaintiff has not offered any evidence that he cut himself, he cannot show that he did so. But the plaintiff has submitted some evidence. In his verified complaint, where he swore under penalty of perjury that his statements are true and correct to the best of his knowledge, the plaintiff swore that he'd harmed himself. He also attached and incorporated by reference a contemporaneous record—Inmate Complaint CCI #201423555 and the subsequent appeal. Dkt. No. 20 at 3; Dkt. No. 20-2 at 11; Dkt. No. 21 at ¶4. Very near the time of the events he described, then, the plaintiff made the same allegations he makes in his summary judgment motion. At the summary judgment stage, a court treats a sworn complaint like an affidavit. Bowers v. Pollard, 602 F.Supp.2d 977, 986 (E.D. Wis. 2009).

The plaintiff also properly supported his allegations in his proposed findings of fact. Dkt. No. 21-1. The plaintiff cited to his verified complaint and referenced an affidavit he drafted in support of his proposed findings of fact, in accordance with Federal Rule of Civil Procedure 56(c)(1)(A). Dkt. No. 22-1. The plaintiff's story—that he seriously cut himself—is not blatantly contradicted by the record, as the defendant argues in his supporting brief. Dkt. No. 30 at 6. The plaintiff properly supported his version of events, so the court cannot disregard it. See Scott v. Harris, 550 U.S. 372, 378-81 (2007). A reasonable jury could believe either version of events, so there is a genuine dispute of material fact as to whether the plaintiff suffered an objectively serious harm.

There also is a genuine dispute of material fact regarding the subjective prong of the deliberate indifference standard. The plaintiff argues that the

8

defendant was deliberately indifferent because the plaintiff told the defendant that he was going to harm himself, and the defendant did nothing. Dkt. No. 21 at ¶1; Dkt. No. 20-2 at 10. He also asserts that after the defendant witnessed the plaintiff cutting himself, the defendant again did nothing and walked away. Dkt. No. 21 at ¶2; Dkt. No. 20-2 at 10. The defendant has not addressed this prong, because he argues that the plaintiff never threatened to cut himself and did not cut himself.

It is the role of a reasonable jury to decide whether it believes the plaintiff's version of events or the defendant's. Summary judgment is not appropriate, and the court will deny both motions.

## II. PLAINTIFF'S MOTION TO STRIKE LUCAS WEBER'S DECLARATION (DKT. NO. 44)

In support of his reply brief, the defendant filed a sworn declaration from Lucas Weber, security director at Columbia. Dkt. No. 39. The declaration is short; it says that Weber could not find a referral form from the warden asking Weber to investigate the plaintiff's inmate complaint. Id. It also says that after the plaintiff appealed the dismissal of the complaint, Weber told the deputy warden that he didn't think there was a need for further investigation. Id. The plaintiff asks the court to strike the declaration, arguing that Weber must be lying because he does not appear to be relying on any documentation; the plaintiff asserts that it appears Weber claimed to remember all of this information without the aid of any documentation. Dkt. No. 44 at 1.

The court will deny the plaintiff's motion as moot. The court did not need to consider the investigation of the inmate complaint to determine that there is

9

a genuine issue of material fact as to whether the plaintiff suffered an objectively serious harm. The court considered the inmate complaint only to the extent that it is evidence supporting the plaintiff's claim about what happened on November 28, 2014. The appeal of the complaint and whether Security Director Weber investigated the complaint is irrelevant to the question of whether, as a matter of law, there are genuine disputes of material fact about whether the defendant violated the plaintiff's constitutional rights on November 28, 2014.

### III.  CONCLUSION

The court **DENIES** the plaintiff's motion for summary judgment. Dkt. No. 19**.**

The court **DENIES** the defendant's motion for summary judgment. Dkt. No. 29.

The court **DENIES AS MOOT** the plaintiff's motion to strike the declaration of Lucas Webber. Dkt. No. 44.

The court will recruit a lawyer to represent the plaintiff. Once the court has found an attorney willing to assist the plaintiff, it will send the plaintiff a form to complete, indicating that he agrees with the representation and that he agrees to reimburse any expenses from any award he might receive. Once the

court receives that signed paperwork, it will set a hearing with the attorneys to discuss scheduling.

Dated in Milwaukee, Wisconsin this 29th day of July, 2019.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**United States District Judge**